LIDIA MAHER (CSBN 222253)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
lidia.maher@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHUN-CHENG YEH, a.k.a. ALEX YEH,<br><br>Defendant. | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE**<br><br>No. CR 10-00231 (WHA) |

## I.   INTRODUCTION

The United States files this Sentencing Memorandum in support of its recommendation that this Court, consistent with the proposed Plea Agreement, sentence defendant Chun-Cheng Yeh, a.k.a. Alex Yeh, to a term of imprisonment of eight (8) months and a fine of $20,000.  A copy of the Plea Agreement, which is pursuant to Fed. R. Crim. P. 11(c)(1)(B), is attached to this Sentencing Memorandum as Exhibit 1.

An eight-month sentence strikes the appropriate balance among the various sentencing factors.  It accounts for the seriousness of the crime and just punishment, while taking into consideration acceptance of responsibility and cooperation.  It is also in line with other sentences that individuals have received in recent criminal antitrust cases.  The government disagrees with the recommended term of imprisonment of four (4) months contained in the presentence report ("PSR") prepared by U.S. Probation.  Probation justifies the additional discount based on the

\\

SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE
No. CR 10-00231 (WHA)                    - 1-

1   defendant's minimal role, voluntary surrender, and personal characteristics.  The eight-month

2   sentence already takes the factors into consideration.

3   **II.  BACKGROUND**

4        **A.  Defendant Yeh**

5        On March 30, 2010, defendant Yeh, a foreign national who resides in Taiwan, was

6   charged by indictment with a one-count violation of the Sherman Antitrust Act, 15 U.S.C. § 1,

7   for his participation in a conspiracy to fix prices, reduce output, and allocate market shares of

8   color display tubes ("CDTs") in the United States and elsewhere.  CDTs are a type of cathode

9   ray tube which is a component product used in the manufacture of non-flat panel computer

10  monitors and other similar products.  The Indictment alleges a conspiracy to suppress

11  competition in CDTs from at least as early as January 1997, and continuing until at least as

12  late as March 2006, and charges defendant Yeh with participating in the conspiracy from at

13  least as early as May 1999, and continuing until at least March 2005.

14       After defendant Yeh was indicted in 2010, he remained a fugitive for five years until

15  he came to the United States in 2015 to face the charges.  He was arraigned on the Indictment

16  on November 17, 2015.  Later that day, he pleaded guilty before this Court to the one count

17  contained in the Indictment under Fed. R. Crim. P. 11(c)(1)(B).  Since that time, the defendant

18  has provided valuable cooperation to the Antitrust Division's investigation, including making

19  himself available for an interview.  The defendant is obligated to continue to provide such

20  cooperation with the government's investigation pursuant to the cooperation terms of the Plea

21  Agreement.  *See* Plea Agreement, Exh. 1, at ¶ 15.

22       **B.  Other Legal Proceedings Related to the CRT Conspiracy**

23       Defendant Yeh was one of six individuals, all foreign nationals living abroad, who

24  were indicted in connection with the government's investigation into antitrust violations in the

25  cathode ray tube ("CRT") industry.  The six individuals were indicted in four separate

26  indictments returned between 2009 and 2010.  *See United States v. Cheng Yuan Lin, a.k.a.*

27  *C.Y. Lin*, Case No. CR 09-0131 (WHA), Dkt. No. 1; *United States v. Wen Jun Cheng, a.k.a.*

28  *Tony Cheng*, Case No. CR 09-0836 (WHA), Dkt. No. 1; *United States v. Chun-Cheng Yeh,*

1    *a.k.a. Alex Yeh*, Case No. CR 10-0231 (WHA), Dkt. No. 1; *United States v. Seung-Kyu Lee,*

2    *a.k.a. Simon Lee, et al.*, Case No. CR 10-0817 (WHA), Dkt. No. 1.

3          In addition, on May 17, 2011, one corporation, Samsung SDI, pleaded guilty to a one-

4    count information charging it with fixing prices, reducing output, and allocating market shares

5    of CDTs in violation of Section 1 of the Sherman Act.  It was sentenced to a fine of $32

6    million and no order of restitution.  *See United States v. Samsung SDI Company, Ltd.*, Case

7    No. CR 11-0162 (WHA).

8          The indictments charging the six individuals and information charging Samsung SDI

9    were all related to this Court.  After one indicted defendant passed away, the government

10   dismissed the indictment against him, in April 2014.  *See United States v. Cheng Yuan Lin,*

11   *a.k.a. C.Y. Lin*, Case No. CR 09-0131 (WHA), Dkt. Nos. 18-19.  Besides defendant Yeh, the

12   other remaining indicted individuals are all fugitives at this time.

13         Civil litigation related to the CRT industry began in 2007 shortly after the grand jury

14   investigation went overt, and multiple civil direct and indirect purchaser antitrust class actions

15   are currently pending against CRT manufacturers.  Over 40 such class actions were originally

16   filed around the country alleging price fixing of CRT products.  These cases were ordered

17   transferred to this district for coordinated pretrial proceedings by order of the United States

18   Judicial Panel on Multidistrict Litigation dated February 15, 2008.  These consolidated actions

19   were assigned to Judge Samuel Conti and subsequently transferred to Judge Jon Tigar.  *In Re*

20   *Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 07-5944 (JST), MDL No. 1917.

21   Individual cases by direct and indirect purchasers were also filed.  It is the government's

22   understanding that, at this time, the majority of the direct and indirect class action settlements

23   have been negotiated and are pending at various stages of court approval.  Class counsel

24   recently approximated that roughly $100-125 million in settlement has been negotiated on

25   behalf of the direct purchaser class, and roughly $600 million in settlement has been

26   negotiated on behalf of the indirect purchaser class.

27   \\

28   \\

SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE
No. CR 10-00231 (WHA)                    - 3-

## III. GUIDELINES CALCULATIONS

The parties and U.S. Probation agree that the appropriate Guidelines sentencing range for imprisonment is 10 to 16 months and the appropriate fine range is $89,368 to $446,842. *See* PSR at ¶¶ 56 and 63.

The agreed-upon Sentencing Guidelines calculation is as follows:

| | | | | |
|---|---|---|---|---|
| **A.** | **Base Offense Level** [U.S.S.G. §2R1.1(a)] | | | 12 |
| **B.** | **Specific Offense Characteristics** [U.S.S.G. §2R1.1(b)] | | | |
| | i. | Volume of commerce adjustment (greater than $1M and less than $10M) [U.S.S.G. §2R1.1(b)(2)] | | +2 |
| | | *Adjusted Offense Level* | | *14* |
| **C.** | **Acceptance of Responsibility** [U.S.S.G. §3E1.1] | | | -2 |
| | **TOTAL OFFENSE LEVEL** | | | **12** |
| | **GUIDELINES RANGE** [U.S.S.G. §5, Pt. A] | | | **10-16 months** |
| | **FINE RANGE** (calculated as one to five percent of the volume of commerce, but not less than $20,000) [U.S.S.G. §2R1.1(c)(1)] | | | **$89,368 to $446,842** |

## IV. MOTION FOR DOWNWARD DEPARTURE

The United States hereby moves, pursuant to U.S.S.G. §5K1.1, for a downward departure from the Guidelines minimum of 10 months to eight (8) months and a reduction in the Guidelines minimum fine from $89,368 to $20,000. This recommended reduction is due to the substantial assistance provided by the defendant in the investigation of other individuals who have committed antitrust and related offenses in the CDT industry, particularly by providing evidence against the indicted individuals who remain fugitives at this time. Should those individuals choose to face the charges brought against them in the United States, defendant Yeh is a potential trial witness who could provide valuable testimony. The defendant's assistance to date has been detailed and thorough, and he has been cooperative and forthcoming. In addition, defendant Yeh has willingly come to the United States to face

\\

1   the charges and accept responsibility, and is the first fugitive in the case to do so.  The

2   defendant will continue to provide assistance pursuant to the terms of his Plea Agreement.

3   **V.  EIGHT MONTHS IS AN APPROPRIATE SENTENCE**

4          Yeh was an active participant in the CDT conspiracy.  He attended 29 cartel meetings

5   with competitors during which agreements were reached to fix prices, reduce output, and

6   allocate market shares of CDT to be sold in the United States.  Although not the highest-

7   ranking Chungwa executive involved in the conspiracy, Yeh was a management-level

8   employee who, at times, had the authority to make pricing decisions.

9          For five years after his indictment, Yeh chose to remain a fugitive.  Ultimately,

10  however, Yeh came forward to accept responsibility for his actions.  He is the first and only

11  individual indicted in the CDT conspiracy to come to the United States to face the charges and

12  admit to his wrongdoing.  As a result, the United States recommends starting the sentencing

13  calculation at the low end of the Guidelines.  To account for Yeh's cooperation to date and his

14  commitment to future cooperation, the United States recommends a further reduction in his

15  sentence from 10 months to eight months.

16         The factors set forth in 18 U.S.C. § 3553(a) support an eight-month sentence.  No

17  further departures or variances are warranted.

18         **A.  The Nature and Circumstances of the Offense and History and Yeh's**
           **Characteristics Support and Eight-Month Sentence**
19

20         Criminal antitrust violations are serious, white-collar crimes like mail and wire fraud.

21  When Congress increased the maximum prison terms for antitrust violations from three to ten

22  years, it recognized that additional penalties are necessary to deter large-scale cartels, like this

23  one, that affect millions of dollars of commerce.  *See* Antitrust Criminal Penalty Enhancement

24  and Reform Act of 2004, Pub. L. 108-237 (2004).  Congress intended to send a message to

25  antitrust offenders: "[I]f they are caught they will spend much more time considering the

26  consequences of their actions within the confinement of their prison cells."  150 Cong. Rec.

27  H3657 (daily ed. June 2, 2004) (statement of Rep. Sensenbrenner).  As Senator Kohl noted,

28  "criminal antitrust violations, crimes such as price fixing and bid rigging, committed by business

SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE
No. CR 10-00231 (WHA)                    - 5-

1    executives in a boardroom are serious offenses that steal from American consumers just as surely

2    as does a street criminal with a gun."  150 Cong. Rec. S3610-02, S3615.

3        In some ways the white-collar price fixer is more blameworthy than the common

4    criminal.  White-collar criminals, like Yeh, are often in less desperate circumstances when they

5    commit their crimes than a other types of offenders.  When sentencing two price fixers, Judge

6    Bennett of the Northern District of Iowa observed that a "crime of fraud by one who already has

7    more than enough—and who cannot argue that he suffered a deprived or abusive childhood or

8    the compulsion of an expensive addiction—is simply a crime of greed."  *United States v.*

9    *VandeBrake*, 771 F. Supp. 2d 961, 965, 1006 (N.D. Iowa 2011) (internal citations and quotations

10   omitted), *aff'd,* 679 F.3d 1030 (8th Cir. 2012).

11       Yeh was a management-level employee at a major corporation.  It is not unusual for

12   someone in his position to have significant education, contribute meaningfully to his community

13   and family, suffer no mental disorders or drug addiction, and have no prior criminal record.

14   These characteristics, however laudable, are shared by most criminal antitrust defendants.  They

15   provide no reason to depart downward from the Guidelines sentence because the Guidelines

16   already account for such a typical offender.  *See Carter*, 560 F.3d at 1121-22 (9th Cir. 2009)

17   (observing that a defendant's prior history and circumstances must be so "atypical as to put [the

18   defendant] outside the 'minerun of roughly similar' cases considered by the Sentencing

19   Commission in formulating the Guidelines"); *see also* U.S.S.G. §5H1.11 ("Civic, charitable, or

20   public service; employment-related contributions; and similar prior good works are not

21   ordinarily relevant in determining whether a departure is warranted.").

22       **B. An Eight-Month Sentence Reflects the Seriousness of the Offense, Promotes**
          **Respect for the Law, and Provides Just Punishment**
23

24       The CDT conspiracy was significant.  Civil class actions have resulted in settlements of

25   approximately $100-125 million on behalf of the direct purchaser class, and roughly $600

26   million on behalf of the indirect purchaser class.

27   \\

28   \\

SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE
No. CR 10-00231 (WHA)                 - 6-

1   Yeh participated in the conspiracy for nearly six years, from May 1999 to March 2005.

2   He participated in cartel meetings and was involved in the implementation of the agreements

3   reached at those meetings and the monitoring of those agreements.

4   Although he waited until he was indicted and remained a fugitive for five years, he

5   ultimately came in and accepted responsibility.

6   These facts weigh in favor of a meaningful term of imprisonment.

7   **C.  An Eight-Month Jail Term Is Necessary to Provide Deterrence**

8   For corporate managers like Yeh, prison sentences are a more effective deterrent than

9   fines.  The legislative history of the Sentencing Reform Act notes that for white-collar crimes,

10  "the heightened deterrent effect of incarceration and the readily perceivable receipt of just

11  punishment accorded by incarceration were of critical importance."  S. Rep. No. 98-225, at 91-

12  92 (1983) *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3274-75.  As a "very senior corporate

13  executive" once told a top antitrust enforcer, "as long as you are only talking about money, the

14  company can at the end of the day take care of me . . . but once you begin talking about taking

15  away my liberty, there is nothing that the company can do for me."  Donald I. Baker, *The Use of*

16  *Criminal Law Remedies to Deter and Punish Cartels and Bid Rigging*, 69 Geo. Wash. L. Rev.

17  693, 705 (2001).  Employees have been known to expose themselves and their employers to

18  enormous risk in the pursuit of profit for the employer.  The risk of incarceration will help deter

19  such behavior.

20  **D.  An Eight-Month Sentence Is Consistent with Other International Criminal**

21  **Cartel Sentences**

22  The Antitrust Division has prosecuted numerous foreign national defendants involved

23  in Sherman Act violations.  Most of these foreign national defendants have negotiated

24  preindictment plea agreements with the Division and voluntarily appeared in the United States

25  to face the charges brought against them when they could have chosen to remain abroad.

26  The most recent example is the LCD prosecution, which involved conduct that was

27  similar to that in the CDT industry.  Nine foreign individuals pleaded guilty to price fixing in

28  the LCD industry, and two others were convicted at trial.

SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE
No. CR 10-00231 (WHA)                    - 7-

1    The nine pleading LCD defendants all pleaded guilty preindictment.  Their sentences

2    ranged from six to 14 months and averaged nine months.  The two foreign-national

3    individuals who were convicted at trial received sentences of 24 and 36 months.

4    Defendant Yeh's eight-month sentence is in line with established precedent.

5  **VI.  PROBATION'S FOUR-MONTH RECOMMENDED SENTENCE IS
       UNREASONABLE**

6

7    In its final PSR, U.S. Probation recommended a custodial sentence of just four months.

8    As justification for this variance, the PSR pointed to Yeh's "minimal role" in the conspiracy

9    and certain elements of his background, including his lack of priors, his voluntary surrender,

10   and his responsible behavior towards his family.  These considerations have already been

11   factored into the eight-month sentence and do not justify any further reduction in sentence.

12        **A.  The Minimal Role Adjustment Does Not Apply**

13   The Guidelines allow for a downward adjustment for defendants who played a minimal

14   role in the charged crime.  U.S.S.G. §3B1.2 ("Mitigating Role").  Although the PSR does not

15   explicitly include this reduction in its Guidelines calculation, it justifies a variance based on

16   Yeh's alleged "minimal role."  Defendant Yeh was not a "minimal" or "minor" participant in the

17   offense and should not receive the benefit of this discount.

18   Defendant Yeh was employed by Chunghwa in various CDT sales roles from

19   approximately July 1992 until March 2005 and became a Director of Sales around March

20   2002.  *See* Indictment, Dkt. No. 1, at ¶ 6.  He left his employment at Chunghwa around March

21   2005.  While employed at Chunghwa, defendant Yeh regularly attended cartel meetings with

22   competitors in the CDT industry, as described in the Plea Agreement and Indictment.  *See*

23   Plea Agreement, Exh. 1, at ¶¶ 2–4; Indictment, Dkt. No. 1, at ¶¶ 4-5.  At various times during

24   the course of these competitor meetings, the individual participants, including defendant Yeh,

25   had discussions and reached agreements to charge prices of CDTs at certain target levels or

26   ranges.  Indictment, Dkt. No. 1, at ¶ 5.  They also had discussions and reached agreements to

27   reduce production levels of CDTs by shutting down manufacturing lines for certain periods of

28   time.  *Id*.  They further discussed and agreed to allocate target market shares of CDTs for the

SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE
No. CR 10-00231 (WHA)                    - 8-

1    overall market, as well as for particular customers.  *Id*.  Another of the functions of the

2    competitor meetings was that, in order to implement, monitor, and enforce their agreements,

3    the competitors frequently shared their sales, production, market share, and pricing

4    information.  *Id*.  Defendant Yeh had an important role in this implementation feature of the

5    competitor meetings and agreements.  The government submits that a characterization of his

6    role as minimal or minor would be inaccurate.

7                 **B.  Yeh's Personal History Does Not Justify a Downward Variance**

8            The PSR recommends a downward variance under 18 U.S.C. §§ 3553(a)(1) and (2)(C)

9    because the defendant voluntarily came to the U.S. from abroad to face the charges when he

10   could have simply remained overseas.  *See* PSR at ¶ 73, and Sentencing Recommendation at

11   p. 1.  However, the PSF does not acknowledge that Yeh waited until he was indicted and then

12   waited an additional five years as a fugitive.  As discussed above, many foreign defendants in

13   the LCD matter pleaded guilty prior to indictment.

14           It is true that defendant Yeh could have chosen to remain overseas and not face the

15   charges.  But his decision to accept responsibility and cooperate has been acknowledged and

16   reflected in both the Guidelines calculations and the government's motion for a downward

17   departure.

18           The PSR also points to Yeh's personal history and family responsibilities as grounds

19   for a downward variance.  Among white-collar defendants, there is nothing unique about

20   Yeh's personal background that would justify a discount.

21                **C.  A Four-Month Sentence Would Create Unwarranted Sentencing Disparities**

22           A four-month sentence in this case would be inconsistent with the sentences of other

23   foreign defendants in cartel cases.  It would be significantly lower than the six-month sentence

24   imposed on one of the earliest pleading defendants in the LCD case, who provided timely

25   cooperation pre-indictment, including evidence that helped secure additional convictions and

26   prosecutions in connection with the LCD investigation.

27           In sum, the government believes that the four-month sentence recommended by U.S.

28   Probation in the PSR would result in potentially disparate sentences between defendant Yeh

SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE

1   and other defendants found guilty of similar conduct in this District, and that a

2   characterization of defendant Yeh's role in the offense as minimal or minor is not reflected by

3   the facts of this case.  The negotiated Plea Agreement between the parties and the jointly

4   agreed-upon eight-month sentence, as well as the government's motion for departure,

5   adequately take into account defendant Yeh's role in the offense as well as his acceptance of

6   responsibility for his conduct and decision to come to the United States to face the charges

7   against him.

8   **VII.  CONCLUSION**

9       Eight months is an appropriate and reasonable sentence for defendant Yeh.  The facts

10  of the case cannot justify Probation's recommendation for a four-month sentence.  As a result,

11  the government respectfully requests that the Court accept the proposed Plea Agreement,

12  including the recommended term of imprisonment of eight (8) months and a fine of $20,000.

13

14  DATED:  February 23, 2016                    Respectfully submitted,

15                                               */s/ Lidia Maher*
                                                 Lidia Maher
16                                               U.S. Department of Justice

17

18

19

20

21

22

23

24

25

26

27

28

SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE
No. CR 10-00231 (WHA)                    - 10-